[Cite as *State v. Simmons*, 2026-Ohio-2601.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

SHANIKA S. SIMMONS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 CO 0015

---

Application for Reopening

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Application Denied.

---

*Atty. Vito J. Abruzzino,* Prosecuting Attorney*, Atty. Christopher R.W. Weeda*, Assistant Prosecuting Attorney for Plaintiff-Appellee. No Brief Filed. and

*Shanika S. Simmons*, pro se.

Dated: July 8, 2026

**PER CURIAM.**

**{¶1}** Defendant-Appellant Shanika S. Simmons filed a timely pro se application for reopening of her direct appeal in which we affirmed her felony conviction. For the following reasons, her application is denied.

**{¶2}** After a jury trial in the Columbiana County Common Pleas Court, Appellant was convicted of promoting prostitution in violation of R.C. 2907.22(A)(1), which states: "No person shall knowingly: (1) Establish, maintain, operate, manage, supervise, control, or have an interest in a brothel or any other enterprise a purpose of which is to facilitate engagement in sexual activity for hire." The offense was a fourth-degree felony. R.C. 2907.22(B)(1). The trial court imposed a sentence of 12 months in prison.

**{¶3}** On appeal, an experienced attorney was appointed to represent her and filed a brief raising three assignments of error. First, it was argued because the state alleged Appellant offered the sexual services of herself and another female to an undercover officer, she received ineffective assistance of trial counsel when her trial attorney failed to subpoena the other female. Next, she argued the state failed to present sufficient evidence on the elements of the offense with particular emphasis on the enterprise element. Lastly, she claimed the verdict was against the manifest weight of the evidence. We overruled her assignments of error and affirmed her conviction. *State v. Simmons*, 2026-Ohio-360, ¶ 76 (7th Dist.).

**{¶4}** App.R. 26(B)(1) allows a defendant in a criminal case to file an application to reopen an appeal from the judgment of conviction based on ineffective assistance of appellate counsel. The application is timely if filed within 90 days of the journalization of our judgment affirming the conviction. App.R. 26(B)(1).

**{¶5}** "An application for reopening shall contain . . . One or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation . . ." App.R. 26(B)(2)(c).

**{¶6}** Additionally, the application "shall contain . . . A sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B)(2)(c) of this rule

and the manner in which the deficiency prejudicially affected the outcome of the appeal, which may include citations to applicable authorities and references to the record . . ." App.R. 26(B)(2)(d). This sworn statement is mandatory, and the failure to comply with (B)(2)(d) is alone grounds for denial of the application. *State v. Lechner*, 72 Ohio St.3d 374, 375 (1995).

**{¶7}** On February 18, 2026, two weeks after our February 4, 2026 judgment was journalized, Appellant filed what she called a "limited Application to Reopen for the purpose of preserving her right to reopening" while asking for court-appointed counsel to file "a fully developed memorandum." (2/18/26 App.). Her application cited multiple subdivisions of App.R. 26(B), showing her familiarity with the application's content requirements.

**{¶8}** However, relevant to reopening, her application merely states: "Applicant believes she was denied effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution. Specifically, appellate counsel did not raise certain record-based constitutional issues that Applicant believes were stronger than those presented." (2/18/26 App.), citing *Strickland v. Washington*, 466 U.S. 668 (1984) (setting forth the test for ineffective assistance of counsel) and *Smith v. Robbins*, 528 U.S. 259 (2000). We note in the cited *Smith* case the Court observed: "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal . . . it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Id.* at 288 (and then provided an example of a court ruling the presumption of effective assistance will not be overcome unless ignored issues are *clearly* stronger than those presented).

**{¶9}** Likewise, relevant to reopening, the sworn statement filed with the application merely stated, "I believe appellate counsel failed to raise certain constitutional issues apparent from the record." While specifically citing App.R. 26(B)(2)(d), her sworn statement insisted she could not "fully brief those issues" without assistance of counsel because she was not trained in the law. (2/18/26 App.).

– 4 –

{¶10} She attached to her February 18 application two non-record-based exhibits but did not address them within or even incorporate them into her sworn statement. One exhibit was an email she sent to her appellate attorney in the fall of 2025 complaining about the brief. Appellant's email indicated she wanted to raise credibility arguments related to the detective's testimony that Appellant posted the advertisement online, sent a picture of herself, and brought condoms to the meeting place. However, weight of the evidence, which entails credibility determinations, was raised by counsel in the brief.

{¶11} Appellant's email also said, "venue was not the address listed in the fake bill of particulars" while claiming she was "pulled over before ever getting to the house." The attached email response from appellate counsel pointed out the appellate court demanded the brief be filed "immediately" after she sought to further delay the appeal by attempting to terminate him (after multiple prior extensions for briefing). He noted he sent the order to her while she was in Trumbull County jail but she must have been released before it arrived. He also pointed out he raised the issues giving her the best chance of reversal and that he did not agree with her venue argument.

{¶12} Regardless, the emails and the subjects within them were not mentioned in the February 18 application for reopening and were not addressed in or even incorporated by her accompanying affidavit. In failing to specify any assignments of error or arguments that appellate counsel allegedly should have raised, her application to reopen is deficient.

{¶13} The rule does not provide for a limited/placeholder application, supplemental filings, or appointed counsel to construct the application. App.R. 26(B); *State v. Twyford*, 2005-Ohio-4380, ¶ 8 (where the Supreme Court confirmed there is no right to appointed counsel to prepare and file an application for reopening); *State v. Richardson*, 74 Ohio St.3d 235, 236 (1996) (no right to file second or subsequent applications for reopening).

{¶14} Although her application and affidavit explain the deficiency as being based on a desire for the appointment of counsel who would file "a fully developed memorandum," her application cannot be construed as merely a demand for counsel (rather than her actual application for reopening) because *she already filed that demand for counsel in a previous motion*. That is, on February 13, 2026, she filed a "Motion for

Appointment of Counsel" for an "Anticipated App.R. 26(B) . . . Application to Reopen based on ineffective assistance of appellate counsel" while stating, "Appellant is indigent and respectfully requests appointment of counsel to: Investigate ineffective assistance claims [and] Properly prepare Rule 26(B) . . ." (2/13/26 Mot.). In accordance with Ohio Supreme Court precedent, her motion was denied by this court. (2/23/26 J.E.); *Twyford* at ¶ 8.

{¶15} Although specifically voicing her knowledge that an App.R. 26(B) application for reopening is timely if filed within 90 days, she refused to wait until her February 13 motion was ruled on and instead chose to file the application to reopen on February 18, 2026. Although the "limited" application asked for counsel again, she was aware her motion for counsel was unwarranted because she specifically stated: "Pursuant to App.R. 26(B)(6)(a), the Court may appoint counsel if reopening is granted." (2/18/26 App.), citing App.R. 26(B)(6)(a). The cited provision in the rule clearly provides: "If the court grants the application, it shall . . . appoint counsel to represent the applicant if the applicant is indigent and not currently represented." App.R. 26(B)(6)(a). Nevertheless, Appellant's application to reopen again requested counsel, not just for the hoped for future rebriefing as allowed by rule but to construct her deficient application in the first place.

{¶16} Appellant apparently believed she could create her own procedure for the reopening process by naming her application a "limited" application to reopen, claiming yet again that she could not articulate her arguments without appointed counsel, declaring that she was preserving jurisdiction to make additional filings, and asking for leave to file a supplemental memorandum through counsel. However, she already filed the motion seeking an attorney, her deadline for reopening was nowhere near expiring, and instead of waiting for our ruling denying her request for counsel to merely file the application, she wasted her application opportunity on another request for counsel despite citing the rule showing she was not entitled to counsel unless we granted the reopening application.

{¶17} She may have realized this because the day after she filed the application for reopening, she filed a pro se "amended" application to reopen containing the supplemental memorandum she previously mentioned. As exhibits, she attached the

email to her attorney and his response, along with our own appellate docket in her case. She then purported to have the entire February 19 filing notarized as her sworn statement by signing a declaration that the application and exhibits were true and correct.

**{¶18}** However, this does not comply with App.R. 26(B)(2)(d), quoted above, requiring a sworn statement on the basis for claiming deficient representation and how the deficiency prejudicially affected the outcome of the appeal. *State v. House*, 2003-Ohio-5066, ¶ 4 (8th Dist.) (insufficient sworn statement by merely swearing "the facts contained in this motion for ineffective assistance of counsel are true to the best of my knowledge"). The Supreme Court agrees, "attaching an affidavit swearing to the truth of the allegations of his application . . . falls short of the particularity required by the rule." *State v. Franklin*, 72 Ohio St.3d 372, 373 (1995) (specifically rejecting the appellant's argument that he complied with App.R. 26(B)(2)(d) by swearing before a notary that all of the contents of his application were true).

**{¶19}** Appellant's "amended" application sets forth eight proposed assignments of error she believed counsel should have raised or that he should have framed as arising under the federal constitution, claiming her arguments are stronger than the ones he raised. As proposed assignments of error, she set forth phrases or headings and then made arguments under each. Notably, the supplementation of her lacking February 18, 2026 application for reopening is invalid and not an available method of submitting a proper application. Moreover, the deficiencies were purposeful rather than accidental. Her amended filing on February 19 could be rejected on this basis alone. We do not allow parties to create their own procedure and continually update or supplement filings at their whim so as to finally create an allegedly complete application; otherwise, the rule would have no meaning, and the state would have a duty to continually respond to new applications. In any event, her February 19, 2026 amendment does not demonstrate entitlement to reopening the appeal.

**{¶20}** To warrant reopening for further briefing, the application must demonstrate a "genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5). If a genuine issue on ineffectiveness is established and further briefing is thus ordered, then the appellant would be required to fully prove

Case No. 25 CO 0015

the ineffectiveness of appellate counsel by demonstrating deficient performance and prejudice. App.R. 26(B)(7)-(9).

{¶21} The traditional two-pronged test of deficiency and prejudice provides the underlying framework for assessing whether an application raises a genuine issue as to the ineffectiveness of appellate counsel under App.R. 26(B)(5). *State v. Tenace*, 2006-Ohio-2987, ¶ 5, applying *Strickland*, 466 U.S. at 687. Deficient performance means a serious error in representation that falls below an objective standard of reasonableness. *Strickland* at 688 (refrain from second-guessing the strategic decisions of counsel). In assessing the cited deficiency, a reviewing court heavily defers to counsel's judgment and strongly presumes the contested conduct was in the wide range of reasonable representation. *Tenace* at ¶ 7. The prejudice inquiry asks whether there is reasonable probability the result of the proceedings would have been different in the absence of the cited deficiency. *Id.* at ¶ 5; *Strickland* at 693 (reasonable probability is more than "some conceivable effect on the outcome of the proceeding").

{¶22} More specifically, to the first stage in App.R. 26(B), to justify reopening the appeal for further briefing, the applicant must meet the burden of demonstrating a "genuine issue" as to whether he has a colorable claim of ineffective assistance of appellate counsel. *Tenace* at ¶ 6. A reopening applicant must keep in mind "appellate counsel need not raise every possible issue in order to render constitutionally effective assistance." *Id.* at ¶ 7, citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues, to avoid diluting the force of stronger arguments."). Moreover, "An error-free, perfect trial does not exist, and is not guaranteed by the Constitution." *State v. Italiano*, 2021-Ohio-1283, ¶ 35 (7th Dist.), citing *State v. Hill*, 75 Ohio St.3d 195, 212 (1996). We turn to Appellant's eight proposed assignments of error, which as mentioned above are each represented by a topical heading with an argument thereunder.

{¶23} First, Appellant reasserts her appellate arguments on the enterprise element of promoting prostitution, citing due process rights. Oddly, she complains counsel failed to cite a United States Supreme Court case on sufficiency, which our

opinion cited in any event. *See Simmons*, 2026-Ohio-360, at ¶ 47, 65-66 (7th Dist.), citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The sufficiency standard is the same under federal and state law. *See id.* at ¶ 65*, citing State v. Getsy*, 84 Ohio St.3d 180, 193 (1998), quoting *Jackson* at 319. The rule providing for an application to reopen is not an open invitation to raise issues previously adjudicated. *Lechner*, 72 Ohio St.3d at 375.

**{¶24}** Second, she complains about the jury instruction on the enterprise element, again saying she was convicted without proof and invoking due process. She cites the portion of the transcript where the defense renewed a motion for acquittal by arguing the state failed to meet the enterprise element and where counsel said he had no objections to the jury instructions provided to the attorneys in advance. (Tr. 277-280). This does not elucidate some issue with the jury instructions. The jury instruction on enterprise merely quoted the statute. (Tr. 287). Her contention citing the motion for acquittal here appears to be based upon the same argument she made on appeal regarding the analysis of the enterprise element, which was disposed of above in the first proposed assignment of error on the element of enterprise.

**{¶25}** Third, Appellant contends appellate counsel should have claimed the state failed to demonstrate venue beyond a reasonable doubt. On this topic, her email to her appellate counsel said she was pulled over before getting to the house. She notes the detective testified she told him she was in a city located in a different county when they were initially communicating to arrange for her and her friend's services. Recognizing venue can be waived if not objected to at trial, she claims she did not waive venue but preserved the issue by complaining about it at sentencing, months after trial.[1] In any event, venue was clearly established. *See* R.C. 2901.22 (venue options). The East Palestine detective testified he was in Columbiana County the entire time while receiving texts from Appellant, who arranged the services of herself and another prostitute, who agreed to travel to East Palestine, a village in Columbiana County, and who did then drive her vehicle to this village in Columbiana County sending a final text to him just prior to their arrival at the address close to the center of East Palestine. (Tr. 172, 192-194, 199). He explained the address provided to Appellant was a vacant condemned house on the

---

[1] At various points, the application cites non-existent page numbers of the sentencing transcript.

very end of a dead-end street, and Appellant was pulled over after passing the last livable home on the street. *Id.* at 193-194. We also note Appellant testified that she arranged the meeting with the detective-client and went to East Palestine that day because she was doing her "calls" which at the time included "happy endings." *Id.* 231-232. There is no indication of a deficiency or prejudice in failing to brief the venue issue on appeal.

{¶26} Fourth, Appellant alleges appellate counsel should have asserted a *Brady* due process violation. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (prosecution has affirmative duty to disclose evidence that is favorable to the accused and material to the accused's guilt or punishment and inadvertence is no excuse); *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (favorable evidence is material so that constitutional error results from nondisclosure if there is a reasonable probability the result would have been different had the evidence been disclosed to the defense). She points to her mid-trial claim that there was a third phone call with the detective that was not provided as evidence in discovery; she claimed the other prostitute spoke during that call. When raised at the end of the state's case, her attorney said this was the first he learned of Appellant's claim about a missing phone call, but he moved for a mistrial on her prompting. (Tr. 218-219). Her attorney recognized the call would have been recorded since the detective used an independently administered law enforcement application. *Id.* at 219; *see also Simmons*, 2026-Ohio-360, at ¶ 6 (7th Dist.) (reviewing the detective's testimony about LETS, an undercover law enforcement system, which provided him a number to use while communicating with Appellant and unalterably recorded all texts and calls).

{¶27} The prosecutor replied by attesting there was no third phone call. The detective testified about the two calls, the recordings of which were played at trial. He also testified he spoke to Appellant but never spoke to the other prostitute. The prosecutor also pointed out the defense did not supply discovery to the state or raise this issue after being provided with two calls in discovery. *Id.* at 220-221. The court overruled the motion, believing the state's assertion that the LETS system recorded only two calls. *Id.* at 223. We also note the state then moved in limine to preclude Appellant from claiming there was a third call; however, Appellant was thereafter allowed to testify to her claim that there was a third call during which the other prostitute spoke. *Id.* at 243 (as

she believed a person cannot promote prostitution if the other prostitute speaks to the client, albeit long after Appellant's completion of the negotiation for the joint services of both Appellant and the other prostitute). As the trial court could easily and reasonably find a lack of credible evidence that there existed a recording of a third call, appellate counsel was not ineffective by failing to raise a discovery or *Brady* issue.

**{¶28}** Fifth, Appellant claims appellate counsel should have argued she was denied an evidentiary hearing on her new trial motion. The jury verdict was entered on July 29, 2024, and sentencing was set for October 3, 2024. On the morning of sentencing, her attorney filed a motion for new trial with the affidavit of the other prostitute attached. Appellant decided not to appear for sentencing (as she admitted later). When Appellant was arrested and brought before the court on January 10, 2025, the trial court pointed out there was no request for an oral evidentiary hearing on the Crim.R. 33 motion for new trial. No timely objection or request for hearing was made upon this observation. The court thereafter denied the motion on April 11, 2025. In addressing Crim.R. 33(A)(6), the Ohio Supreme Court pointed out "[t]he plain language of the rule does not require an oral hearing." *State v. Bostick*, 2025-Ohio-5559, ¶ 14. The evidentiary hearing can be upon the affidavits already submitted by the defendant with the motion. *Id.* at ¶ 16-17, 19 (and the decision whether to hold an oral hearing is left to the trial court's discretion). The court had broad discretion to determine whether an oral hearing was necessary, and the defense essentially agreed it was not. In such circumstance, there is no genuine issue as to whether appellate counsel was ineffective by failing to complain about the lack of an oral hearing.

**{¶29}** Sixth, Appellant claims the post-verdict delay in holding the sentencing hearing violated her due process rights, citing *Betterman v. Montana*, 578 U.S. 437 (2016). However, this case held the speedy trial clause does not apply to postconviction, presentencing delay, and referred to state statutes or rules on the topic. *Id.* at 440-448 (refusing to consider due process where not raised while noting rights are diminished after trial); see Crim.R. 32(A) ("Sentence shall be imposed without unnecessary delay."); Crim.R. 32.2 (presentence investigation). Here, Appellant caused the delay.

{¶30} On the record after the July 29, 2024 jury verdict, Appellant asked for a presentence investigation (PSI) instead of agreeing the court should proceed immediately to sentencing as the state desired.  Over the state's objection, the court allowed Appellant to remain out on bond pending the October 3, 2024 sentencing.  Appellant subsequently failed to report for the PSI (and never thereafter reported for it).  Then, she refused to appear for sentencing on October 3, 2024.  She had her attorney file a motion for new trial, thereafter demanded his withdrawal, and then received another attorney.  When brought before the court with new counsel on January 10, 2025, she admitted she purposely decided not to appear for sentencing because she was not prepared to be imprisoned.  After denying her motion for new trial, the court could not proceed with the sentencing hearing scheduled for April 17, 2025 because Appellant did not appear due to being held in federal custody.  At the rescheduled date on April 30, 2025, Appellant tried to terminate her latest attorney.  Appellant then asked for and was granted a continuance to further prepare for sentencing.  The court rescheduled the sentencing for May 8, 2025.  However, on May 6, the defense asked for another continuance, which the court granted.  Sentencing then finally proceeded on May 23, 2025.   In addition to Appellant causing the presentencing delay, there is no indication of any conceivable prejudice.

{¶31} Seventh, Appellant claims appellate counsel should have raised a challenge to the portion of her sentence requiring her to register as a tier one sex offender. The offense of which the jury convicted her was statutorily listed as a sexually oriented offense subject to tier one sex offender registration.  R.C. 2905.01(A)(1), (E)(1)(a), citing R.C. 2907.22; *see also State v. McFarland*, 2024-Ohio-669, ¶ 13 (7th Dist.) (promoting prostitution does not fall under consensuality exception to registration as sexual conduct or sexual contact is not an element of the offense).  Her application vaguely claims the label was contrary to law because her conviction was "legally infirm" or unsupported by evidence on the elements and thus lacking in due process.  On the general legality of a sentence, she cites *State v. Fischer*, 2010-Ohio-6238, which was abrogated by *State v. Harper*, 2020-Ohio-2913.  In any event, the cited case dealt with post-release control advisements, but Appellant makes no argument on post-release control of which she was

advised. Appellant also cites three federal cases *Apprendi*, *Blakely*, and *Alleyne*, which all dealt with whether certain sentencing findings used to increase a sentence violate the right to a jury. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *Blakely v. Washington*, 542 U.S. 296, 303-304 (2004) (right to a jury trial violated when the judge was allowed to sentence beyond maximum by making a "deliberate cruelty" factual finding); *Alleyne v. United States*, 570 U.S. 99, 117 (2013) (right to a jury trial violated when the judge increased mandatory minimum prison sentence by finding a weapon was brandished, which was essentially an element not submitted to the jury). However, there is no allegation the court made a finding of fact to punish her beyond what was authorized by the jury's verdict. *See Apprendi* at 494; *Blakely* at 304; *State v. Hacker*, 2023-Ohio-2535, ¶ 27-28 (where the Ohio Supreme Court rejected a defendant's argument about the application of those cases because the prescribed range of penalties was determined upon the return of a guilty verdict). The jury found the elements of the offense beyond a reasonable doubt, and to the extent Appellant relies on contentions addressed elsewhere (such as on the evidence supporting her conviction), we incorporate our prior holdings here.

**{¶32}** Lastly, Appellant argues appellate counsel should have raised an argument about jury impartiality based on the voir dire. Without any explanation, she cites two cases. *See Smith v. Phillips*, 455 U.S. 209, 217 (1982) (voir dire as a safeguard of juror impartiality but discounting theory of implied bias); *Irvin v. Dowd*, 366 U.S. 717, 728 (1961) (where the Court said in a capital case, "With his life at stake, it is not requiring too much that petitioner be tried in an atmosphere undisturbed by so huge a wave of public passion and by a jury other than one in which two-thirds of the members admit, before hearing any testimony, to possessing a belief in his guilt."). Here, there was no indication of public passion, knowledge of her case by the venire, or a juror possessing a belief in her guilt. She does not specify what voir dire answer or juror she protests, and her cite to the record is to a page in the transcript where the detective was sworn in as a witness. Notably, the defense passed on its third peremptory challenge and then was satisfied with the jury

without using its fourth and final peremptory challenge. (Tr. 126-127). There is no indication of ineffective assistance of appellate counsel in refraining from briefing a voir dire issue on partiality.

{¶33} For the various alternative reasons set forth above, Appellant has not demonstrated a genuine issue as to whether there is a colorable claim of ineffective assistance of appellate counsel. Accordingly, the "limited" application to reopen is denied, as is the "amended" application.

**JUDGE CAROL ANN ROBB**

**JUDGE CHERYL L. WAITE**

**JUDGE  MARK A. HANNI**

<u>NOTICE TO COUNSEL</u>

This document constitutes a final judgment entry.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

<u>Case No. 25 CO 0015</u>